ST. LOUIS, IRON MOUNTAIN & SOUTHERN RAILWAY COMPANY

v. YORK.

Opinion delivered November 1, 1909.

1. APPEAL AND ERROR—FORMER OPINION AS LAW OF CASE.—Upon a second appeal the principles of law determined upon the first appeal are binding and must stand as the law of the case; and if the testimony upon the second trial is substantially the same as on the first trial, then the decision on the first appeal upon all questions of law involved in the case must be followed on the second appeal. (Page 557.)

2. MASTER AND SERVANT—DEFECTIVE APPLIANCE.—Where a railroad company neglected ·to furnish an automatic coupler on its cars, or to repair a defective one, as required by the safety appliance act of Congress of March 2, 1893, and a brakeman was injured thereby, a *prima facie* case of negligence at least was established. (Page 558.)

3. SAME—DEFECTIVE APPLIANCE—LIABILITY OF MASTER.—A railroad company is liable for an injury caused by the defective condition of a car coupler where the evidence shows that the coupler was broken so that it would not work, and that the defect was discoverable by proper inspection, and that the railroad company did not exercise reasonable care to discover the defect or to repair same after such discovery. (Page 558.)

4. SAME—CONTRIBUTORY NEGLIGENCE—ACTING IN EMERGENCY.—Where a servant was required to act quickly in an emergency, he cannot be held guilty of contributory negligence as matter of law because he failed to exercise the best judgment; it is a question for the jury in such case whether he acted as a prudent and careful person would have done under the same circumstances. (Page 559.)

5. SAME—CONTRIBUTORY NEGLIGENCE—EFFECT OF CUSTOM.—Where it was the custom for defendant railroad company's brakemen to go between slowly moving cars to couple and uncouple them, it was properly left to the jury to determine whether plaintiff's deceased was negligent in so doing. (Page 561.)

6. SAME—CONTRIBUTORY NEGLIGENCE—VIOLATION OF MASTER'S RULES.—Proof that a servant violated the master's rules will not establish negligence on the servant's part if it does not appear that he knew of the rules, or if the rules were being violated with the master's knowledge. (Page 563.)

Appeal from Miller Circuit Court; *Jacob M. Carter,* Judge; affirmed. .

*Kinsworthy & Rhoton* and *Jas. H. Stevenson,* for appellant.

Where one elects the more dangerous of two methods of performing an act and is injured while so doing, no recovery

should be allowed.    128 Fed. 529; 82 N. E. 675; 79 N. E. 1040. Going between the cars was the proximate cause of the injury. 79 N. E. 1040; 83 N. E. 343. One should not adopt the more dangerous of two methods of doing a thing. 149 Mich. 126; 129 Fed. 347. The Safety Appliance Act of Congress does not abolish the doctrine of contributory negligence. 117 Fed. 462. A recovery can be had in such cases only when defendant is guilty of using such couplers as are prohibited by the act. 4 Penn. (Del.) 80. Therefore, if plaintiff contributes to the injury by his own negligence, he cannot recover. 129 Fed. 347. The defense of contributory negligence is as available after as before the passage of the act. 113 N. W. 1120; 147 Mich. 454. The difference between the defenses of "assumed risks" and "contributory negligence" is clearly defined in 88 Ark. 243; 205 U. S. 1; 129 Fed. 347. The conscious negligence of a servant in doing or omitting to do an act is not assumed risk. 20 Tex. Civ. App. 161; 105 S. W. 1149. In selecting the least dangerous of two or more methods of doing an act, the servant should not ignore defects.    128 Fed. 529.

*William H. Arnold,* for appellee.

Upon a second appeal the court will not review or correct its former decision, even though it be erroneous in point of law or based upon a misconception of fact. 56 Ark. 170; 55 Ark. 609. The question is narrowed to one of contributory negligence. 86 Ark. 244; 82 Ark. 11; 205 U. S. 1; 138 Ala. 487. The question of negligence does not arise in the act of an employee going between the cars. 205 U. S. 1. Congress, by the act in question, intended to make the duty of the railroad company absolute. 210 U. S. 281. A litigant should not be permitted to urge other grounds of objection to an instruction than were urged in the trial court. 83 Ark. 61; 66 Ark. 46; 75 Ark. 76; 75 Ark. 325; 56 Ark. 602; 69 Ark. 637; 82 Ark. 391; 73 Ark. 594; 81 Ark. 190; 65 Ark. 54; 65 Ark. 255. The absolute duty of the defendant to furnish automatic couplers is not satisfied by the use of ordinary care. 163 Fed. 517; 162 Fed. 775; 168 Fed. 175; *Id.* 236; 169 Fed. 407. The fact that a car can be repaired more conveniently at another place does not justify its being moved in a defective condition. 169 Fed. 372; 71 Ark. 445; 83 Ark. 591; 86 Ark. 244; 162 Fed. 145; *Id.*

403. It is the duty of one desiring a more specific instruction to request one in proper form. 88 Ark. 225. If the employees constantly and notoriously violated the rules of the company for a long period of time, this amounts to an abrogation of the rules by the custom. 77 Ark. 405.

*Kinsworthy & Rhoton* and *Jas. H. Stevenson,* in reply.

If the lever on one side of the car fails to work, the employee should go to the other side; and if, instead of doing so, he goes between them to uncouple them, he is guilty of contributory negligence. 108 Fed. 747. The Safety Appliance Act abolishes the defense of assumed risks only; and does not apply to the defense of contributory negligence. 106 S. W. 441; 91 Fed. 229; 10 Am. Neg. Rep. 166.

FRAUENTHAL, J. This was an action instituted by A. B. York, as administrator of the estate of J. C. York, for the benefit of his estate and next of kin against the St. Louis, Iron Mountain & Southern Railway Company, the defendant below, for the alleged negligent death of said J. C. York. Upon a former trial in the circuit court a verdict was directed in favor of the defendant. This court reversed the judgment rendered upon that verdict and remanded the cause for a new trial. The report of the opinion of this court upon that appeal will be found in 86 Ark. 244. Upon a second trial of the cause in the circuit court a verdict was returned in favor of the plaintiff for $9,950; and from the judgment entered thereon the defendant now prosecutes this appeal.

The testimony in the case tended to prove the following facts: J. C. York was a brakeman in the employ of the defendant on one of its freight trains, running from Knobel, Arkansas, to Memphis, Tennessee. Upon the arrival of the train at Wynne, which was a junction of several branch lines of defendant's railway, it became necessary to set out upon the side track a box car loaded with flour and bound over one of those branch lines for Helena. The engine attached to a coal car, and this box car was backed in on the side track; and York was sent to uncouple the box car, while making a flying switch. He proceeded on the proper side of the box car to make the uncoupling with the lever, but the lever which worked

the coupler was out of order and did not work, and he then went between the cars to lift the pin with his hand. The cars were moving slowly, and he walked along with them slowly backward as he uncoupled the cars. In getting out from between the cars after making the uncoupling his foot was caught in some way just on the outside of the rail, presumably in the unblocked frog or by the guard rail which was between the track upon which the cars were moving and a track intersecting it. The cars were somewhat wider than the track, and when his foot became thus detained he was thrown down by the moving car, and the oil boxes of the coal car crushed him between them and the ground, breaking his spine and otherwise injuring him in such a manner that he suffered intense agony for six weeks and then died from the effects of the injury. The coupler on the box car was out of repair. The chain which connected the pin with the pin lifter was broken, so that no uncoupling could be made with the lever attached to this coupler. Upon the opposite side of these cars and on the end of the coal car there was a lever attached to the coupler on the coal car, by which the cars could have been uncoupled, but this could only be reached by going around or over the cars. There was also testimony showing that the cars could have been stopped by the brakeman giving a signal to the engineer.

The above is in effect the same testimony that was introduced in the cause on its first trial in the circuit court, and upon which the former decision was rendered by this court. The same witnesses testified on the two trials, and their testimony on the material issues involved in this case was substantially the same. The matters which were adjudicated by this court upon the former appeal cannot be retried in the circuit court nor can they be reviewed upon this second appeal by this court. The questions of law there determined became the law of this case on this subsequent trial and appeal, whether we may now believe them to be right or wrong. The finding of the facts upon the former appeal cannot be binding as to the finding of the facts in this second trial, because the testimony on the second trial might be different from or additional to that given on the first trial. But the principles of law determined and announced upon the former appeal are binding, and must stand

as the law of this case; and if the testimony upon this second trial is substantially the same as on the first trial, then the former decision of this court upon all questions of law involved in this case must be followed on this appeal. *Porter* v. *Doe*, 10 Ark. 186; *Scott* v. *Fowler*, 14 Ark. 427; *Perry* v. *Little Rock & F. S. Ry. Co.*, 44 Ark. 383; *Taliaferro* v. *Barnett*, 47 Ark. 359; *Vogel* v. *Little Rock*, 55 Ark. 609; *Dyer* v. *Ambleton*, 56 Ark. 170; *Fordyce* v. *Edwards*, 65 Ark. 98; *Heard* v. *Ewan*, 73 Ark. 513; *St. Louis, I. M. & S. Ry. Co.* v. *Neal*, 83 Ark. 591; 3 Cyc. 492.

Upon the former appeal this court determined that the proximate cause of the injury was not the unblocked frog in which York's foot may have been caught, but was the failure of the company to furnish a coupler which would enable the brakeman to uncouple the cars without going between them. The duty to provide such a coupler was a statutory duty imposed by the act of Congress of March 2, 1893.

The evidence upon this second appeal shows that the defendant failed to furnish such a coupler in working order as was required by the said act of Congress; and that the failure to furnish such a coupler in working order was the direct and proximate cause of the injury. Usually, the master is only bound to exercise ordinary care to provide suitable appliances and tools for the servant, and is liable for damages caused by defective machinery only where the evidence shows that he neglected to repair the defect after having notice thereof, or when by the exercise of ordinary care he would have known that the same was defective. But where the statute requires the master to furnish a particular safe appliance, and he violates that statutory duty, and injury is caused thereby, the rule is different. In such event the violation of the statutory duty from which the injury results makes out a *prima facie* case of negligence, if not an absolute case.

It is urged by counsel for plaintiff that the duty imposed by the act of Congress to furnish the particular character of a coupler and in effective working condition, is an absolute duty, and that no kind of exercise of care on the part of the railroad company will relieve the company from liability for the damages that ensue from an injury caused by a failure to actually

furnish such a coupler and in good working order. And to sustain that position they refer to the following cases: *Schlemmer* v. *Buffalo, Rochester, etc., Ry. Co.,* 205 U. S. 1; *St. Louis, I. M. & S. Ry. Co.* v. *Taylor,* 210 U. S. 281; *United States* v. *Chicago Great Western Ry. Co.,* 162 Fed. 775; *United States* v. *Atchison, T. & S. F. Ry. Co.,* 163 Fed. 517; *United States* v. *Southern Pac. Ry. Co.,* 169 Fed. 407.

But we do not think that it is necessary to pass upon that question in this case.

By the said Safety Appliance Act of Congress the duty was imposed upon defendant to furnish the character of coupler named in that act for the safety of its servants in coupling and uncoupling its cars; and a coupler out of repair so that it would not work was not such a coupler. The evidence in this case shows that the coupler was broken so that it would not work, and that this defect was discoverable by proper inspection, and that the defendant did not exercise or use ordinary and reasonable care by proper inspection to discover this defect, or to repair same after such discovery.

The defendant in this case failed to keep in repair the coupler required by the act of Congress, and this failure was the proximate cause of the injury. In fact, there was no testimony that the defendant had made any inspection of this coupler at any time before the injury; and therefore there was no evidence of the exercise of ordinary care on the part of the defendant in the premises. *St. Louis, I. M. & S. Ry. Co.* v. *Rice,* 51 Ark. 467; *St. Louis, I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 181; *St. Louis, I. M. & S. Ry. Co.* v. *Wells,* 82 Ark. 372.

From the above it follows that the court was correct in refusing to give all such instructions asked for by the defendant as were based on the theory that the unblocked frog was the proximate cause of the injury, and also in refusing all the instructions asked by the defendant which advanced the theory that the evidence must show that the defendant had notice of the defect in the coupler or was negligently ignorant of same.

It is urged by counsel for defendant that the undisputed evidence shows that York was guilty of contributory negligence, because he failed to cross over to the other side of the track and use the lever on the end of the coal car or to give

a signal to stop the train, and then make the uncoupling. But it cannot be said as a matter of law under the circumstances of this case that York was guilty of contributory negligence on this account. That was a question for the jury to determine, and not one of law for the court to decide. The facts of this case show that there was great necessity for rapid and immediate action by him in uncoupling the cars. The main body of the freight train upon which York was working was upon the main track, and a passenger train was rapidly approaching on that track; another passenger train was standing on a side track; and another freight train was standing on a side track. All these trains were waiting the movement of the freight train, upon which York was working, from the main track; and that movement was awaiting the action of York in uncoupling the box car that was to be set out from his train on the side track. Under these circumstances, which required immediate action, an emergency was thus presented, and York was required to decide quickly what course to pursue. Through the negligence of the defendant he was placed in a situation where he had to adopt an alternative. It has been held by this court that when one is required to act quickly in an emergency he cannot be held to be guilty of contributory negligence, as a matter of law, if he failed to exercise the best judgment or did not take the safest course. The question is then for the jury to determine whether under all the circumstances of the case he acted as an ordinarily prudent and careful person would have done under similar circumstances in adopting the course he did, even though it proved to be the more dangerous. *Choctaw, O. & G. Rd. Co.* v. *Thompson*, 82 Ark. 11; *Kansas City S. Ry. Co.* v. *Henrie*, 87 Ark. 443.

Under such circumstances, before it can be said that he was guilty of contributory negligence in going between the cars to make the uncoupling, as was said in the case of *Choctaw, Oklahoma & Gulf Rd. Co.* v. *Thompson, supra,* "it must appear that the danger was so obvious that a person of ordinary prudence and care would not have attempted to make the coupling in the way that he did." *Kansas City So. Ry. Co.* v. *Henrie,* 87 Ark. 443.

It has been held by this court that "it is not negligence *per se* for a brakeman to go in between moving cars in order to couple them together; * * * whether it was negligence to do so under the circumstances of the case was a question for the jury." *Choctaw, O. & G. Rd. Co.* v. *Thompson, supra.*

In this case it was shown that the cars were moving slowly, and that it was the custom of the brakemen at that time in defendant's employ to go between the slowly moving cars to couple or uncouple them, and that this had been the custom for some years. It then became a question for the jury to say whether deceased acted as an ordinarily prudent person would have done and used such care as an ordinarily prudent and careful person would have used under the circumstances. If he did, he was not guilty of contributory negligence. In the case of *Narramore* v. *Cleveland, etc., Ry. Co.*, 37 C. C. A. 499, Circuit Judge Taft expressed the principle as follows:

"Assumption of risk and contributory negligence approximate when the danger is so obvious and imminent that no ordinarily prudent man would assume the risk of injury therefrom. But where the danger, though present and appreciated, is one which many men are in the habit of assuming, and which prudent men who must earn a living are willing to assume for extra compensation, one who assumes the risk cannot be said to be guilty of negligence if, having in view the risk assumed, he uses care reasonably commensurate with the risk to avoid injurious consequences."

Under the circumstances of this case, we do not think it was negligence as a matter of law for York to have adopted the course of going in between the cars, instead of giving the signal to stop the cars or going around to the lever on the other side of the coal car, although the course he adopted did not prove the safest; nor was it negligence *per se* for him to have gone between the slowly moving cars.

It is urged that the court committed error in giving instruction number 1 on behalf of plaintiff, on the ground that it takes from the jury the question as to whether or not York was negligent in going between the cars. That instruction is as follows:

"1.   You are instructed that it is made unlawful by an act of Congress for a common carrier to haul or permit to be hauled or used on its line any car used in moving interstate traffic, not equipped with couplers coupling automatically by impact, and which can be uncoupled without the necessity of men going in between the ends of the cars; and it is further provided by said act of Congress that any employee of any such common carrier who may be injured by any car in use contrary to the provisions of said law shall not be deemed to have assumed the risk thereby occasioned, although continuing in the employment of such carrier after the unlawful use of said car had been brought to his knowledge.   And in this case if you believe the deceased, J.   C. York, was injured by reason of the coupler of one of the cars of the defendant being out of repair, contrary to the provisions of said law, and that said car was in use by said defendant in moving interstate traffic, that the deceased attempted to uncouple the cars by means of the lever of said coupler, and that it would not perform its functions by reason of said coupler being out of repair, as alleged in the complaint, and that in order to uncouple said car the deceased went in between the cars, then you are instructed that he did not assume the risk incident thereto, and you may find for the plaintiff—if you further find that he used the caution of a reasonable prudent person in the line of business."

We do not think that the objection to this instruction is well founded.   It only provided that, notwithstanding the default of the company, the performing of the work should not be taken as an assumption of risk; and the fair purport of it was still to leave to the jury for its determination the question as to whether York was guilty of contributory negligence either in going between the cars or in his conduct thereafter under all the circumstances at the time.

The defendant also contends that the court committed error in refusing to give instruction number 11 asked by the defendant.   That instruction was as follows:

"11.   If the jury believe from the evidence that deceased knew and appreciated the danger of going between the cars to uncouple, then, and with that knowledge, went in between moving cars to uncouple the same, and was injured on account·

of being between said cars while the same were in motion, you will find for the defendant."

The effect of this instruction would be to make it negligence *per se* for a brakeman to go between moving cars to perform the duty of uncoupling. As above stated, we think this view is not correct, but that it was under the circumstances of this case a question for the jury to determine whether the acts of the deceased were negligent. It was not error to refuse this instruction.

Nor do we think that the right of plaintiff to recover herein was affected by any rule of the company. As we understand the rules introduced in evidence, the deceased under the testimony did not violate any of their provisions. And, if he did, there is no testimony showing that he had any knowledge of them, and there is ample evidence that they were being violated with the knowledge of the company, which in effect abrogated them. *St. Louis, I. M. & S. Ry. Co.* v. *Caraway,* 77 Ark. 405; *Choctaw, O. & G. Rd. Co.* v. *Thompson,* 82 Ark. 11; *St. Louis, I. M. & S. Ry. Co.* v. *Holmes,* 88 Ark. 181; *St. Louis, I. M. & S. Ry. Co.* v. *Puckett,* 88 Ark. 204; 1 Labatt on Master & Servant, § 232.

The appellant does not contend that the verdict of the jury is excessive. We have examined carefully the evidence and the instructions in this case, and we do not find any reversible error committed in the trial of this cause.

The judgment is therefore affirmed.